**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12-cv-02109-RM-MJW

BROADCAST MUSIC, INC.,
JOHNNY BIENSTOCK MUSIC,
SONY/ATV SONGS LLC d/b/a SONY/ATV TREE PUBLISHING,
SHOWBILLY MUSIC,
BOCEPHUS MUSIC, INC.,
TOKECO TUNES, and
WACISSA RIVER MUSIC, INC.,

     Plaintiffs,

v.

CAREY-ON SALOON, LLC d/b/a CAREY-ON SALOON, and
LESHAWN RENEE CAREY, individually,

     Defendants.

---

**ORDER GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 24)**

---

THIS MATTER comes before the Court on Plaintiffs' Motion for Summary Judgment ("Motion") (ECF No. 24) on their action for copyright infringement under 17 U.S.C. § 101 *et seq.* ("Copyright Act"). Plaintiffs allege they own copyrights on certain musical compositions, or the right to license the public performance rights of such copyrighted compositions, which were infringed by Defendants' unauthorized public performance of seven musical compositions. The Court has jurisdiction pursuant to 28 U.S.C. § 1338(a). Upon consideration of the Motion and other papers filed, and the applicable law, the Motion is granted for the reasons stated herein.

## I.  FACTUAL BACKGROUND

Plaintiff Broadcast Music, Inc. ("BMI") is a "performing rights society" which licenses the right to publicly perform copyrighted musical compositions on behalf of the owners of these works.  The other Plaintiffs are copyright owners ("Owners") of musical compositions from whom BMI acquired the non-exclusive public performance rights to the seven musical compositions at issue in this case: American Soldier; Call Me the Breeze; Courtesy of the Red, White and Blue; Neon Moon; Okie from Muskogee; Whiskey Bent and Hell Bound; and Who's Your Daddy (collectively, the "Seven Compositions").  Each of the Seven Compositions has been registered with the Copyright Office.  By means of "blanket license agreements," BMI grants to users, such as owners and operators of concert halls, restaurants, nightclubs and hotels, the right to publicly perform copyrighted works in BMI's repertoire, including the Seven Compositions.

Defendant Carey-On Saloon, LLC ("Defendant LLC") owns, operates and has a direct financial interest in the Carey-On Saloon located at 6829 Space Village Avenue, Colorado Springs, Colorado.  Defendant LeShawn Renee Carey ("Defendant Carey") is sole owner of Defendant LLC, owner of the Saloon, and responsible for virtually every aspect of the Saloon's operation.

Prior to June 2011, Defendant LLC held a license ("Prior License"), signed by Defendant Carey, for the public performance of music in BMI's repertoire at the Saloon when it was located at 3350 N Chestnut Street, Colorado Springs, Colorado ("Prior Saloon").  When the Prior Saloon stopped operating, the Prior License was cancelled.

On or about June 2011, BMI learned that the Saloon had opened at Space Village Avenue. From June 2011 forward, BMI repeatedly contacted Defendants and informed them they needed to obtain permission for public performances of copyrighted music. BMI also offered to enter into a license agreement with Defendants, which they declined to accept. On October 5, 2011, BMI instructed Defendants to cease and desist from public performances of music licensed by BMI. Thereafter, BMI again notified Defendants they needed to obtain a license for their music use. Although Defendants did not obtain a license from BMI, they did have a license to perform music through the American Society of Composers, Authors and Publishers ("ASCAP") (another performing rights society) and for the jukebox utilized at the Saloon.

On April 19, 2012, Defendants had the right and ability to direct and control the Saloon's activities. On that night, the Saloon was open to the public and BMI sent investigator Daniel Topping to generate an audio recording of the songs played at the Saloon that night along with a written report. Investigator Topping was unable to identify the names of any of the songs performed while he was present at the Saloon but was able to identify two of the artists from the songs he heard that night. Investigator Topping also identified the disc jockey and Karaoke performer as "Annie," Anne Gavin, whom Defendants had instructed to play only music licensed by ASCAP. Defendant Carey was present that night but claims not to know whether those instructions were followed.

Investigator Topping submitted the audio recording to BMI. The recording was, in turn, submitted to BMI Performance Identification employee Joannah Carr who listened to the recording to identify any recorded musical works and any live performances. Based on

Employee Carr's knowledge of the genre of music contained in the recording, she identified the 51[1] songs performed that night at the Saloon, which included the Seven Compositions.

Defendants had no license to perform the Seven Compositions. Further, BMI had not issued a license to any person authorizing the performance of any of the Seven Compositions at the Saloon. There is also no evidence that the Owners of any of the Seven Compositions issued such a license to any person. If Defendants had entered into a license agreement with BMI in June 2011, when BMI first contacted them, the estimated license fees between July 2011 and June 2013 would have been approximately $2,610.00.

## II. ANALYSIS

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1116 (10th Cir. 2013) (internal alterations and quotation marks omitted). In evaluating the summary judgment motion, the court "view[s] the facts, and all reasonable inferences those facts support, in the light most favorable to the nonmoving party." *Simmons v. Sykes Enter., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011). If there is no genuine issue of material fact in dispute, the Court determines the correct application of the substantive law and examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, *supra* at 1116; *Oldenkamp v. United Am. Ins. Co.,* 619 F.3d 1243, 1246 (10th Cir. 2010).

At the summary judgment stage, an affidavit is proper if its contents – the eyewitness account of the affiant – are admissible. *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1122

---

[1] Investigator Topping's report listed 52 songs instead of 51, but the Court finds this "difference" immaterial under the facts and circumstances of this case.

4

(10th Cir. 2005).  The affidavit may not contain expert testimony unless the affiant has first been designated an expert witness under Fed.R.Civ.P. 26(a)(2).  *Id*. at 1122.  Any non-expert testimony must comply with Fed.R.Evid. 701, *i.e.*, rationally based on the witness's perception, helpful, and not based on scientific, technical, or other specialized knowledge.  *Id.* at 1122-1123.

### A.    The Copyright Claim.

The owner of a copyright has the exclusive right to perform or authorize others to perform the copyrighted work.  17 U.S.C. § 106.  In order to establish a copyright infringement, the plaintiff must prove the following five elements: (1) originality and authorship of the copyrighted works involved; (2) compliance with the formalities of the Copyright Act; (3) proprietary rights in the copyrighted works involved; (4) public performance of the compositions involved; and (5) lack of authorization for public performance.  *See Diversey v. Schmidly,* 738 F.3d 1196, 1204 (10th Cir. 2013); *e.g., Broadcast Music, Inc. v. McDade & Sons, Inc.,* 928 F.Supp.2d 1120, 1127 (D.Ariz. 2013); *A & N Music Corp. v. Venezia,* 733 F.Supp. 955, 956 (E.D.Pa. 1990); *Broadcast Music, Inc. v. Pine Belt Invest. Dev., Inc.*, 657 F.Supp. 1016, 1020 (S.D.Miss. 1987); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 912 (D.Conn. 1980).

The first three requirements of authorship, copyright, and ownership are undisputed by Defendants and supported by the Wolfe Declaration and attachments.  Similarly, the fifth requirement of unauthorized performance is established by the Stevens Declaration and its supporting documentation, which also stands unrefuted.  Defendants assert the only barrier to Plaintiffs proving infringement is the fourth requirement that there was public performance of the Seven Compositions.

To establish public performance, Plaintiffs rely on investigator Topping's visit to the Saloon and audio recording and Employee Carr's review of the audio recording, as set forth in their declarations and accompanying reports. Defendants, however, contend Plaintiffs are precluded from using Employee Carr's declaration as she is an expert, and her identification of the Seven Compositions constitutes an expert opinion under Fed.R.Evid. 702 for which no required expert designation and report have been made. Defendants argue that Employee Carr "obviously" has special skills and knowledge because she is capable of identifying any recorded musical work and live performances, *i.e.*, hundreds of thousands of musical compositions. Not surprisingly, relying primarily on *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012), Plaintiffs contend Employee Carr's declaration and report are not expert testimony but simply her percipient observations of the Seven Compositions and declaration to that effect. The Court agrees.

In *Range Road Music, Inc., supra,* the copyright holders' evidence of infringement consisted primarily of an investigator's report and testimony of his visit to the defendants' establishment. During his visit, the investigator identified some songs himself and some songs through titles on a CD jewel case. The live band also announced several of the compositions they played. The defendants argued the district court erred in allowing the investigator's identification because it was expert testimony by a lay witness. On appeal, the Ninth Circuit found to the contrary:

> [investigator's] report and declaration contained his competent percipient witness testimony as a visitor to the Long Beach Roscoe's [the establishment]. Fed.R.Evid. 701. Identifying popular songs does not require "scientific, technical, or other specialized knowledge." Fed.R.Evid. 702. On the contrary, identifying music is a reflexive daily process for millions of radio listeners, amateur karaoke singers, and fans of *Name That Tune* reruns.

*Id.* at 1153 (quotation marks in original). The court also cited to Fed.R.Evid. 701's advisory committee's note "that the distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life . . . ." *Range Road Music, Inc., supra* at 1153.

Defendants argue *Range Road Music, Inc., supra,* is distinguishable because Employee Carr was not a percipient witness as a visitor to the Saloon and because the case is contrary to controlling law, relying primarily on *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011). The Court is unpersuaded. Employee Carr was undisputedly a percipient witness as to the contents/sounds of the audio recording, of which there is also no dispute regarding its authenticity or otherwise. Further, *James River Ins. Co., supra*, and other Tenth Circuit decisions do not require a contrary finding.

Specifically, in *James River Ins. Co., supra*, the Tenth Circuit stated that lay witnesses may not express an opinion on "matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Id.* at 1214 (quotation marks omitted). Such witnesses may, however, "offer observations that are common enough and require a limited amount of expertise, if any." *Id.* (internal alterations and quotation marks omitted). The Tenth Circuit also illustrated the difference between Rules 702 and 701 with *Bryant v. Farmers Ins. Exchange*, *supra*, and *LifeWise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004). In *Bryant*, testimony concerning elementary mathematical operations was admissible as lay opinion because "a simple average of 103 numbers, though technically a statistical determination, [was] not so complex a task" as to require an expert opinion "in order to deem the evidence trustworthy." *Bryant, supra* at 1124. In contrast, in *LifeWise,* testimony

7

about a damages model which concerned moving averages, compounded growth rates, and S-curves was required to be offered by expert and not lay opinion. *LifeWise, supra* at 928-929; *see Sperry v. Werholtz*, No. 10-3145, 413 Fed. Appx. 31, 35-38, 2011 WL 489826, at *3-6 (10th Cir. Feb. 14, 2011) (lay opinion admissible where made with personal knowledge based on witness's job responsibilities and experience).

In this case, Employee Carr's declaration more closely resembles the type of testimony in *Bryant* than in *LifeWise*. Here, the identification of popular songs (the Seven Compositions) is well within the common experience or observations of – or could be reached by – an ordinary person. Employee Carr had to do nothing more than to listen to the audio recording to determine what song was being sung or played. This task required no scientific, technical or other specialized knowledge. In this regard, Defendants' Response provides confirmation of the ordinary nature or common experience of song identification performed at commercial Karaoke sessions. In a needlessly pejorative description of Karaoke, Defendants describe it as "a bunch of drunk amateur singers performing *hit songs* in public to embarrass themselves." (ECF No. 31, page 2, emphasis added.) Similarly, Defendant Carey's Affidavit refers to Karaoke as a process "whereby patrons of a bar sing along to music. … Obviously alcohol can [a]ffect the quality of singing." (ECF No. 31-1, ¶8.)

It hardly seems credible to contend that expert testimony is required to identify "hit songs." Songs are "hits" because they are widely known and popular among the general public. And, the notion that bar patrons, particularly those who might favor one or more alcoholic beverages, would be expected to know readily and sing along with such songs cuts against the conclusion that the identification of such songs is a matter reserved solely for expert testimony.

Employee Carr's declaration is properly considered and unrefuted. Accordingly, Plaintiffs have established their copyrights were infringed as to the Seven Compositions. In light of this determination, the Court need not reach Plaintiffs' alternate argument that Employee Carr's declaration constitutes an admissible business record.

### B. Vicarious Liability of Defendants.

Under the Copyright Act, a person may be secondarily liable for copyright infringement even though that person did not himself or herself perform the protected work. *E.g., MGM Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005); *Diversey v. Schmidly,* 738 F.3d at 1204; *La Resolana Architects, PA v. Reno, Inc.,* 555 F.3d 1171, 1181 (10th Cir. 2009). "Vicarious liability attaches when the defendant has the right and ability to supervise the infringing activity and has a direct financial interest in such activities. A defendant may be vicariously liable even when he or she is not aware of the infringing activity." *Diversey v. Schmidly, supra* at 1204 (internal quotation marks and citation omitted); *see 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013) (discussing secondary liability under Lanham Act). Vicarious liability may also be found even when the defendant lacks knowledge of the copyrighted compositions to be played or any control over their selection by the direct infringer, *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2nd Cir. 1963); lacks any intention to infringe, *id at* 308; or instructs the performers to perform no infringing material, *Walden Music, Inc. v. C.H.W., Inc.,* No. 95-4023-SAC, 1996 WL 254654, at *4 (D.Kan. April 19, 1996). *See also, e.g., Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262-263 (9th Cir. 1996) (cited with approval by the Tenth Circuit in *Diversey v. Schmidly, supra*); *Swallow Turn Music v. Wilson,* 831 F.Supp. 575, 578-579 (E.D.Tex. 1993) (liability attached despite band's contractual

agreement not to perform unlicensed songs); 2 Howard B. Abrams, *Law of Copyright* § 14:52 (2013) (vicarious liability of controlling persons).

Defendants did not perform the copyrighted songs, but are alleged to be vicariously liable as the owners and operators of the Saloon in which the songs were performed. Defendants both admittedly had the right and ability to direct and control the activities of the Saloon on the night of April 19, 2012 and, accordingly, the performance of the Seven Compositions. Defendant LLC also admittedly had – and has – a direct financial interest in the Saloon and, concomitantly, in its activities. Accordingly, the Court finds Defendant LLC is vicariously liable for the copyright infringement which occurred at the Saloon.

Defendant Carey's financial interest in the Saloon/Defendant LLC, however, requires further examination. Defendants' Response was silent on the issue of vicarious liability, having defended solely on the proposition that Plaintiffs could not establish infringement through Employee Carr's testimony. Plaintiffs contend Defendant Carey *admitted* having a direct financial interest in the activities, but the Court finds Plaintiffs' evidentiary support wanting. Construing the facts in the light most favorable to Defendants, as the nonmoving parties, the evidence shows Defendant Carey received $4,000 in gross income from Defendant LLC and admitted she had an *indirect* financial interest in the Saloon. The issue is whether this undisputed financial interest – her receipt of income from Defendant LLC through the activities at the Saloon – constitutes a direct financial interest sufficient to render her also liable as an infringer.

Relying on cases from other jurisdictions, Plaintiffs argue that a corporate officer may be jointly and severally liable with the corporation for copyright infringement. Defendants, being

silent, have not argued otherwise. An examination of Plaintiffs' cases show Defendant Carey's financial interest is sufficient to support liability. *E.g., Sailor Music v. Mai Kai of Concord, Inc.*, 640 F.Supp. 629, 633 (D.N.H. 1986) (president, director and sole shareholder (owner) of corporation liable along with corporation where owner had right and ability to supervise and received monthly salary from corporation); *Broadcast Music, Inc. v. Peppermint Club, Inc.*, Nos. C 83-694 & C 84-7535, 1985 WL 6141, at *5 (N.D.Ohio Dec. 16, 1985) (president and principal shareholder of corporation also liable as he had control or right to control corporation and direct financial interest in success or failure of corporation); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. at 913-914 (vice-president and general manager of corporation also liable where he had complete control over operations and direct stake in financial success of radio station, which would confer economic benefit on corporation and, in turn, its key officer and employee).

Defendant Carey's Affidavit states the Karaoke disc jockey was instructed to play only music licensed by ASCAP, she does not know whether such instructions were followed, and has no "independent memory" of what music was played at the Saloon. No argument was made or legal authority was provided as to why this would insulate either Defendant from liability. Instead, such facts further demonstrate Defendants' control over what could or could not be performed and failure to do so. "It is the innocent infringer who must suffer since he [or she], unlike the copyright owner, either has the opportunity to guard against the infringement (by diligent inquiry), or at least the ability to guard against the infringement (by an indemnity agreement and/or by insurance)." *Shapiro, Bernstein & Co. v. H. L. Green Co., supra* at 308. Accordingly, the Court finds Defendants are jointly and severally liable to Plaintiffs.

### C. Injunctive Relief.

Pursuant to 17 U.S.C. § 502(a), a court may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." An injunction is warranted when there is a "substantial likelihood of further infringement of plaintiffs' copyrights." *Sailor Music v. Mai Kai of Concord, Inc., supra* at 634 (internal quotation marks and citation omitted); *see also Broadcast Music, Inc. v. McDade & Sons, Inc.,* 928 F.Supp.2d at 1136. Here, Defendants knew a license was required, as Defendant LLC previously obtained a license when the Saloon was located at its earlier location. Plaintiffs also repeatedly advised Defendants of the need for a license and offered to provide them the same, but they refused such offers. Defendants' effort to prevent violations of Plaintiffs' copyrights – to give instructions, and nothing more – has proven inadequate and ineffectual. Under such facts and circumstances of this case, Plaintiffs have shown that an injunction should be entered.

### D. Statutory Damages.

An infringer of copyright is liable either for the copyright owner's actual damages and any additional profits of the infringer, or statutory damages. 17 U.S.C. § 504(a). Under Section 504(c)(1), the copyright owner may elect to be awarded statutory damages for all infringements involved in the action, with respect to any one work, in a sum of not less than $750 or more than $30,000 "as the court considers just." Where the copyright owner proves the infringement was committed willfully, the court, in its discretion, may increase the award of statutory damages to a sum of not more than $150,000. Damages may be reduced to not less than $200, however, if the infringer proves a lack of awareness and no reason to believe that his or her acts constituted a copyright infringement. 17 U.S.C. § 504(c)(2).

In determining the amount of damages to award, the trial court is vested with broad discretion to assess what is just in a particular case, "considering the nature of the copyright, the circumstances of the infringement and the like," but such assessment must be neither more than the maximum nor less than the minimum. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-232 (1952). The statutory damages provision is designed to not only compel restitution but also discourage wrongful conduct, as an effective sanction for enforcement of the copyright policy. *Id.* at 233. "[C]ourts must put defendants on notice that it costs less to obey the copyright act than to violate it." *Girlsongs v. 609 Indus., Inc.*, 625 F.Supp.2d 1127, 1131 (D.Colo. 2008). Courts have awarded statutory damages that are between two and three times the license fees that would have been charged and, sometimes, even more. *Id.* at 1131 (collecting cases; awarding $2,000.00 per infringement for a total of $10,000.00, less than three times the license fees "saved" of $3,500.00); *Major Bob Music v. South Shore Sports Bar & Grill, Inc.,* No. 2:08-cv-689, 2010 WL 2653330, at *3-4 (D.Utah 2010) (collecting cases; awarding $2,000.00 per infringement for a total of $12,000.00, less than three times the license fees saved of approximately $4,100.00); *Broadcast Music, Inc. v. McDade & Sons, Inc.,* 928 F.Supp.2d at 1134 (awarding roughly four times the licensing fees that would have been due); 6 William F. Patry, *Patry on Copyright* § 22:174 (2013) (collecting cases; "courts have approved a multiple of three to five times the license fee [infringer] would have paid absent litigation").

In this case, if Defendants had entered into an agreement back in June 2011, when BMI first contacted them, the estimated license fees between July 2011 and June 2013 would have been approximately $2,610.00. Plaintiffs seek statutory damages in the amount of $3,000.00 per infringement, for a total of $21,000.00, which is approximately eight times the amount of license

fees Defendants "saved." Defendants have not disputed the appropriateness of this amount. As previously found, Defendants knew a license was required but rejected BMI's repeated requests and offers to obtain a license. Defendants did, however, obtain a license for some music from ASCAP and for its jukebox and gave instructions to the Karaoke disc jockey.[2] Under such facts and circumstances, Plaintiffs' requested reward is beyond that which is "just." Instead, the Court finds an award of $1,200.00 per infringement for a total of $8,400.00, which is within the statutory range allowed under Section 504(c), is sufficient to serve a deterrent purpose. This award would be roughly three times the amount of license fees which would have been due to Plaintiffs.

### E. Attorney's Fees and Costs.

Pursuant to 17 U.S.C. § 505, the Court may, in its discretion, allow the recovery of "full costs" and award a reasonable attorney's fee to the prevailing party as part of the costs. There is no precise rule or formula for making this determination, but some nonexclusive factors to guide the Court's discretion include: frivolousness, motivation, objective unreasonableness legally or factually, and the need to advance considerations of compensation and deterrence. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & 535 n.19 (1994); *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1270 n. 11 (10th Cir. 2008).

Plaintiffs request an award of $13,060.06, consisting of $12,604.00 in attorney's fees and $456.06 in costs. This request was supported by an affidavit, with substantiating documentation, which sets forth the rates charged; the attorney rates' consistency with rates reported in a survey

---

[2] The Court recognizes at least one court has found that a vicarious infringer's defense that he had a contract with the performer requiring them to not play unauthorized songs would not absolve him from a finding of willful violation where he was notified repeatedly of his responsibilities under the copyright laws. *Swallow Turn Music v. Wilson,* 831 F.Supp. at 580. To the extent that is construed as precluding such fact as a consideration in determining what statutory damages may be "just,' this Court respectfully disagrees.

performed by the American Intellectual Property Law Association ("AIPLA"); the work performed; and the costs incurred.  Defendants failed to respond to Plaintiffs' request, neither disputing the legal authorities cited nor the reasonableness of the fees and costs requested.

In this case, the Court has found Defendants infringed on Plaintiffs' copyrights, rejected repeated opportunities to obtain a license to perform the copyrighted materials, and required Plaintiffs to engage in litigation.  Defendants' Response defended on the sole ground that Employee Carr's testimony was undesignated expert opinion.  Defendants never contested the accuracy of Employee Carr's declaration or any other aspect of Plaintiffs' motion for summary judgment.  Under such facts, the Court finds an award of attorney's fees and costs is appropriate. While the attorney rates (ranging from $325.00-$565.00 per hour) appear high for the Denver market, and at the high end even under the AIPLA, they are nonetheless supported by the AIPLA survey for intellectual property services.  No support, however, has been provided for the paralegal rate of $160.00-$175.00 per hour and an examination of the billing statements fails to show any specialized work which would warrant such a rate.  Instead, the services performed appear no different from any other litigation, *e.g.*, handling copies of documents for service of process, and reviewing file activity and updating electronic files with such information. Accordingly, the fees are denied as to such charges, totaling $968.00.

### III.  CONCLUSION

Based on the foregoing, the Court finds Plaintiffs have met their burden of establishing Defendants' copyright infringement as to the Seven Compositions and of their entitlement to relief.  It is therefore

1. ORDERED that Plaintiffs' Motion for Summary Judgment (ECF No. 24) is hereby GRANTED;

2. FURTHER ORDERED that Defendants Carey-On Saloon, LLC d/b/a Carey-On Saloon and LeShawn Renee Carey are hereby permanently enjoined from publicly performing, or causing or permitting to be publicly performed, any musical compositions in BMI's repertoire, including, but not limited to, the Seven Compositions at issue, in violation of Title 17 of the United States Code, *i.e.,* without a license from BMI, at the Carey-On Saloon or any other business owned, controlled, operated, maintained or conducted, directly or indirectly, by either or both Defendants;

3. FURTHER ORDERED that Plaintiffs are awarded against Defendants Carey-On Saloon, LLC d/b/a Carey-On Saloon and LeShawn Renee Carey, jointly and severally, statutory damages of Eight Thousand Four Hundred Dollars ($8,400.00), which is an award of $1,200.00 for each of the Seven Compositions infringed at the Carey-On Saloon;

4. FURTHER ORDERED that Plaintiffs are awarded against Defendants Carey-On Saloon, LLC d/b/a Carey-On Saloon and LeShawn Renee Carey, jointly and severally, reasonable attorney's fees in the amount $11,636.00;

5. FURTHER ORDERED that Plaintiffs are awarded against Defendants Carey-On Saloon, LLC d/b/a Carey-On Saloon and LeShawn Renee Carey, jointly and severally, costs in the amount of $456.06;

6. FURTHER ORDERED that Plaintiffs shall recover against Defendants Carey-On Saloon, LLC d/b/a Carey-On Saloon and LeShawn Renee Carey post-judgment interest under 28 U.S.C. § 1961 from the date of entry of judgment until the award is satisfied; and

7. FURTHER ORDERED that the Clerk of the Court is directed to enter judgment in accordance with this Order.

DATED this 7th day of February, 2014.

BY THE COURT:

_____

RAYMOND P. MOORE
United States District Judge